IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BOBBIE JO PEARSON, | HONORABLE JEROME B. SIMANDLE |
| Plaintiff, | DE Civil No. 09-227 (JBS/AMD) |
| v. | |
| CHUGACH GOVERNMENT SERVICES INC. and CHUGACH SUPPORT SERVICES INC., | **OPINION** |
| Defendants. | |

APPEARANCES:

Noel E. Primos. Esq.
William D. Fletcher, Jr., Esq.
SCHMITTINGER & RODRIGUEZ, P.A.
414 S State St.
P.O. Box 497
Dover, DE 19903
      Counsel for Plaintiff Bobbie Jo Pearson

Edmund D. Lyons, Jr., Esq.
THE LYONS LAW FIRM
1526 Gilpin Avenue
P.O. Box 579
Wilmington, DE 19899
      -and-
Megan R. Dove, Esq., <u>Pro Hac Vice</u>
Harvey A. Levin, Esq.
THOMPSON COBURN LLP
1 US Bank Plaza
St. Louis, MO  63101
      Counsel for Defendants Chugach Goverment Services Inc. and Chugach Support Services Inc.

**SIMANDLE**, District Judge:

This matter is before the Court because Defendants Chugach Governmental Services and Chugach Support Services (collectively "Defendants"), filed a motion to dismiss pursuant to Rule 12(b)(1), Fed R. Civ. P., and alternatively pursuant to Rule

12(b)(6), Fed R. Civ. P.  Defendants claim to be exempt from
federal anti-discrimination statutes because they are
subsidiaries of an Alaskan Native Corporation.  For the reasons
set forth below, the Court grants this motion to dismiss with
respect to Plaintiff Bobbie Jo Pearson's Title VII claim, but
denies the motion to dismiss Plaintiff's remaining claims because
the Title VII exemption for Alaskan Native Corporations, as
provided for in the Alaska Native Claims Settlement Act, does not
preclude additional employment discrimination claims pursuant to
Title I of the the American with Disabilities Act or the Family
Medical Leave Act.

I.   **BACKGROUND**

The following facts are taken from Plaintiff's Complaint and
Defendants' motion to dismiss, and are accepted as true for the
purposes of this opinion.

A.   **Factual History**

From August 24, 2004 to April 29, 2008, Plaintiff Bobbie Jo
Pearson was employed, first by Defendants Chugach Government
Services, Inc. and later by Chugach Support Services, Inc., as an
administrative assistant at their office on Dover Air Force Base
in Delaware.  (Compl. ¶¶ 1, 2, 13.)  Both Defendants are wholly
owned subsidiaries of Chugach Alaska Corporation ("CAC").  (Mot.
1; Docket item 6 at Ex. B, Ex. C.)  CAC is an Alaskan Native

Corporation,[1] an entity pursuant to the Alaska Native Claims Settlement Act ("ANCSA"), 43 U.S.C. § 1601 et seq. (Defs. Br., Ex. A.) Alaskan Native Corporations ("ANCs") are "organized under the laws of the State of Alaska as a business for profit or nonprofit corporation to hold, invest, manage and/or distribute lands, property, funds, and other assets for and on behalf of a Native Village in accordance with the terms of [the ANCSA]." 43 U.S.C. § 1602(j).

Defendants terminated Plaintiff's employment on or about April 29, 2008. (Compl. ¶ 22.) Defendants contend she was terminated for "excessive tardiness and repeated violations of . . . the policies and procedures" of her employment. (Mem. Supp. Mot. 1.) Plaintiff, however, alleges she was "unjustly" terminated based on her sex and disability. (Compl. ¶ 4, 7, 24, 28, 37.) In addition, she claims Defendants' employees subjected her to a hostile working environment and retaliatory harassment because of her sex and disability. (Compl. ¶¶ 16-18, 20-23, 29.)

**B.    Procedural History**

After being terminated, Plaintiff filed a timely employment discrimination complaint with the EEOC; and the EEOC issued a notice of a right to sue. (Compl. ¶¶ 8-9.) On April 4, 2009, Plaintiff filed the underlying Complaint in the District Court for the District of Delaware [Docket item 1], claiming Defendants

---

[1] Alaskan Native Corporations ("ANCs") are also known as Native Corporations, Native Village Corporations, or Alaska Native Regional Corporations.

3

discriminated on the basis of sex and disability in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and Title I of the American with Disabilities Act ("ADA"), and unlawfully interfered with her rights under the Family Medical Leave Act ("FMLA").[2]  (Compl. ¶ 10).  Due to a vacant judgeship, the undersigned is sitting by designation in the District of Delaware.

On April 27, 2009, in lieu of an Answer, Defendants moved to dismiss pursuant to Rule 12(b)(1), Fed. R. Civ. P., for lack of subject matter jurisdiction, or alternatively pursuant to Rule 12(b)(6), Fed. R. Civ. P., for failure to state a claim.  In support of their motion, Defendants argue that: (1) the Alaska Native Claims Settlement Act ("ANCSA")[3] exempts Alaskan Native Corporations and their majority-owned subsidiaries from Title VII claims, and (2) this exemption is broad enough to bar employer obligations and liabilities arising under other federal anti-discrimination laws.[4]

---

[2] 42 U.S.C. §§ 2000e-5(f)(3) and 12117(a); 29 U.S.C. § 2617(a)(2); and 28 U.S.C. § 1343.

[3] Section 1626 of ANCSA, titled "Relation to other programs," provides the following exemption for Alaskan Native Corporations:

> For the purposes of implementation of [Title VII], a Native Corporation . . . or affiliates [of] which the Native Corporation owns [at least 25 percent] shall be within the class of entities excluded from the definition of "employer" [in Title VII].

[4] In a footnote, Defendants assert that all ANCs are the equivalent of a Native American tribe (Defs. Br. at 2 n.1), but do not raise the implicit argument: as a tribe, ANCs are immune from private causes of action under the doctrine of tribal

(continued...)

In response, Plaintiff stipulates that Defendants are exempt from her Title VII claims; but she opposes their second argument, and contends that their Title VII exemption does not relieve them of employer liabilities under the ADA nor under the FMLA.[5]

## II.   DISCUSSION

### A.   Standard of Review

#### 1.   <u>Motion to Dismiss for Lack of Subject Matter Jurisdiction</u>

Under Fed. R. Civ. P. 12(b)(1), a defendant may move to dismiss on the grounds that the court lacks subject matter jurisdiction.  The Third Circuit has identified two types of jurisdictional defects subject to challenge by a Rule 12(b)(1) motion: (1) those that challenge the subject matter jurisdiction

---

[4](...continued)
sovereign immunity.  <u>See</u> <u>Kiowa Tribe of Okla. v. Manufacturing Technologies, Inc.</u>, 523 U.S. 751 (1998).  Because Defendants did not raise this argument and because ANCs are not federally recognized as a "tribe" when they play no role in tribal governance, <u>Seldovia Native Ass'n v. Lujan</u>, 904 F.2d 1335, 1350 (9th Cir. 1990) ("Because [the Native corporation] is not a governing body, it does not meet one of the basic criteria of an Indian tribe"), the Court does not further analyze Defendants' inaccurate assertion nor its implication.  Defendants have not suggested, and the Court can find no evidence to suggest, that they are governing bodies.  The Court does note in contrast, however, that Alaska Native governing groups are "tribes" and "are afforded the same treatment as Indian tribes for constitutional and legislative purposes."  <u>AFL-CIO v. United States</u>, 195 F. Supp. 2d 4, 21 (D.D.C. 2002).

[5] In addition, Plaintiff filed a motion to strike [Docket Item 11], because Defendants argued for the first time on reply that Plaintiff failed to properly allege her FMLA claim -- giving Plaintiff no opportunity to respond to such an argument. Defendants have voluntarily withdrawn this argument, however, and so the Court will dismiss Plaintiff's motion to strike as moot.

as sufficiently pleaded on the face of the complaint, and (2) those that challenge the factual underpinnings alleged as the basis for the court's subject matter jurisdiction. <u>Mortensen v. First Fed. Sav. & Loan Ass'n</u>, 549 F.2d 884, 891 (3d Cir. 1977); <u>Boston Sci. Corp. v. Johnson & Johnson, Inc.</u>, 532 F. Supp. 2d 648, 652 (D. Del. 2008); <u>NE Hub Partners, L.P. v. CNG Transmission Corp.</u>, 239 F.3d 333, 341 n.7 (3d Cir. 2001). Here, Defendants' Rule 12(b)(1) motion is a facial attack on the subject matter jurisdiction of the Court.  Thus, the Court views all the allegations of the Complaint and documents referenced therein, construing them in the light most favorable to Plaintiff.

      2.  <u>Motion to Dismiss for Failure to State a Claim</u>

In its review of Defendants' motion to dismiss for failure to state a claim, the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 231 (3d Cir. 2008) (quoting <u>Pinker v. Roche Holdings Ltd.</u>, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).  Thus, "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, --- U.S. ---, 129 S. Ct. 1937, 1949 (2009); <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210 (3d Cir. 2009).

6

**B.    Preface**

The question before the Court is one of first impression: whether the Title VII exemption for Alaskan Native Corporations, provided for in the Alaska Native Claims Settlement Act, is broad enough to preclude related employment discrimination claims raised under the ADA and the FMLA.  The answer to this question lies at the confluence of two powerful federal interests.  On one hand, the federal government has recognized the quasi-sovereignty of Native American tribes and tribal entities.  Towards that end, Congress and the Supreme Court have established exemptions and immunities to provide social and political space for Native American self-governance and self-determination.  On the other hand, Congress has recognized the obstacles and injustice of discrimination, and promulgated an interlocking web of statutory prohibitions to reduce and eliminate the harms of employment discrimination.  From the outset, the Court recognizes this opinion must reconcile these competing federal mandates.

**C.    Alaskan Native Corporation Liability Under Title VII**

1.    The Title VII Exemption For Native American Tribes

Title VII of the Civil Rights Act of 1964 was the first major federal legislation prohibiting private employment discrimination.  Under Title VII,

> It [is] an unlawful employment practice for an
> employer . . . to discharge any individual, or
> otherwise to discriminate against any individual
> with respect to his compensation, terms,
> conditions, or privileges of employment, because of
> such individual's race, color, religion, sex, or

7

national origin . . .

42 U.S.C. § 2000e-2(a) (emphasis added).  The applicability of Title VII is limited by its definition of "employer," which excludes, <u>inter</u> <u>alia</u>, Native American tribes.  42 U.S.C. § 2000e(b).

The Title VII exemption for Native American tribes is not limited to the tribe itself.  Section 2000e-2(i) extends the exemption to businesses or enterprises operating on or near Indian reservations that provide an employment preference to Native Americans.  Further, the Ninth and Tenth Circuit have concluded that the tribal exemption is broad enough to encompass some tribal organizations.  <u>See, e.g.</u>, <u>Pink v. Modoc Indian Health Project, Inc.</u>, 157 F.3d 1185, 1188 (9th Cir. 1988) (tribal corporation fell within tribal exemption where the board of directors was drawn from tribal government and controlled another tribal enterprise); <u>Dille v. Council of Energy Resource Tribes</u>, 801 F.2d 373, 375-76 (10th Cir. 1986) (multi-tribe entity fell within the tribal exception where it was formed to manage the tribes' collective energy resources).

The purpose of the tribal exemption is tribal self-governance and economic development.  <u>See</u> <u>Modoc</u>, 157 F.3d at 1188.  Towards this end, Congress condones a Native American employment preference by carving out an exemption from Title VII. As the Supreme Court has explained:

> There are [] affirmative provisions in the 1964 Act excluding coverage of tribal employment and of

> preferential treatment by a business or enterprise on or near a reservation. 42 U.S.C. ss 2000e(b) and 2000e-2(i). [] These 1964 exemptions as to private employment indicate Congress' recognition of the longstanding federal policy of providing a unique legal status to Indians in matters concerning tribal or 'on or near' reservation employment. The exemptions reveal a clear congressional sentiment that an Indian preference in the narrow context of tribal or reservation-related employment did not constitute racial discrimination of the type otherwise proscribed.

Morton v. Mancari, 417 U.S. 535, 547-48 (1974).  Therefore, the scope of the Title VII exemption should be construed narrowly, within the parameters of this federal policy of providing unique legal status to Native Americans in matters concerning tribal employment.  See Wardle v. Ute Indian Tribe, 623 F.2d 670, 672-73 (10th Cir. 1980) (citing Morton, 417 U.S. at 547-48, 553-54).[6]

   2.   The Title VII Exemption for Alaskan Native Corporations

   Alaskan Native Corporations were created by the 1971 Alaska Native Claims Settlement Act[7] to "control[] the funds and lands

---

[6] The original proponent of the exemption, the Senator from South Dakota, explained the purpose of the Native American exemption:

> This amendment would provide to American Indian tribes in their capacity as a political entity, the same privileges accorded to the U.S. Government and its political subdivisions, to conduct their own affairs and economic activities without consideration of the provisions of the bill.
> Let me emphasize that Indian tribes in an effort to decrease unemployment and in order to integrate their people into the affairs of the national community, operate many economic enterprises . . .

110 Cong. Rec. 13702 (1964); see also 110 Cong. Rec. 12723.
   [7] The purpose of the ANCSA was to

(continued...)

for Alaskan Natives." <u>Aleman v. Chugach Support Servs., Inc.</u>, 485 F.3d 206, 209 (4th Cir. 2007); <u>see</u> Pub. L. 92-203, 85 Stat. 688 (1971), codified at 43 U.S.C. §§ 1601-1629a (2009). Under ANCSA, 43 U.S.C. § 1626(g), ANCs are exempted from the employer liabilities of Title VII:

> For the purposes of implementation of [Title VII], a Native Corporation . . . or affiliates [of] which the Native Corporation owns [at least 25 percent] shall be within the class of entities excluded from the definition of "employer" [in Title VII].

Like the federal policy supporting Title VII's tribal exemption, Congress established ANCs to further the "social and economic self-determination" of Alaskan Natives by providing for the self-management of their assets, <u>AFL-CIO v. United States</u>, 104 F. Supp. 2d 58, 72-73 (D.D.C. 2000). Similarly, the legislative history of § 1626(g) indicates that, like the Title VII tribal exemption, the ANC exemption was necessary to permit a ANCs to have a Native American employment preference. <u>See</u> S. Rep. No. 100-201 at 26 (1987) (the primary purpose of the ANCs'

---

[7](...continued)
resolve[] Native claims to Alaska land by instituting a novel form of Native land ownership. Under this innovative scheme, Congress revoked all existing Indian reservations in Alaska but one, and extinguished all aboriginal title and claims to Alaska land. In exchange, ANCSA entitled Native-owned, state-chartered regional and village corporations to receive approximately forty-four million acres of land and $962.5 million in monetary compensation.

<u>John v. Baker</u>, 982 P.2d 738, 748 (Alaska 1999) (citing <u>Alaska v. Native Village of Venetie Tribal Gov't</u>, 522 U.S. 520 (1998)) (internal citations omitted).

Title VII exemption was to "facilitate Alaska Native shareholder employment programs by resolving any uncertainty as to the applicability of [Title VII] to certain business enterprises in which [ANCs] participate"); Malabed v. North Slope Borough, 42 F. Supp. 2d 927, 934 (D. Alaska 1999) (construing § 1626(g) to allow ANCs to "discriminate in favor of Native Americans without violating Title VII," but also finding that it should not be construed to make "virtually every community in Alaska" exempt from anti-discrimination law).

With the growth of the ANCs, the effect of ANCs exemption has reached far beyond a Native American employment preference. Originally, ANCs were asset managing entities.  Today,

> [ANCs] have become an economic force, employing more than 12,000 employees in Alaska and boasting a portfolio of $2.3 billion in 2003.  [ANCs] are in a wide range of businesses, including petroleum services, pipeline construction and maintenance, oil drilling, mining and mining support work, catering and camp services, timber harvesting, and construction.
> . . . many of the [ANCs] have diversified with assets and employees outside of Alaska . . .

The Use of Hiring Preferences by Alaskan Native Corporations After Malabed v. North Slope Borough, 28 Seattle U.L. Rev. 403, 404 (Winter 2005).  This evolution of ANCs into open-market interstate commercial organizations, including employment of non-Native Americans, raises new questions about the scope of the ANC exemption.  Cf. Hollynn D'Lil v. Cher-Ae Heights Indian Community of the Trinidad Rancheria, No. C 01-1638, 2002 WL 33942761, at *5 (N.D. Cal. Mar. 11, 2002) (noting in dicta that the promotion of

tribal economic development does not support unlimited tribal
sovereign immunity from anti-discrimination laws in light of
tribal entities ever-expanding interstate commercial activity)
(citing <u>Kiowa Tribe v. Manufacturing Tech., Inc.</u>, 523 U.S. 751,
754-55 (1998)).[8]

      3.   <u>The Scope of the Alaska Native Corporation
           Exemption</u>

The only court to consider whether the scope of the ANC
exemption is broad enough to preclude employer liability under
other federal anti-discrimination laws concluded that the ANC
exemption should be construed narrowly and did not bar parallel
employment discrimination claims.[9]  In <u>Aleman v. Chugach Support</u>

_____

    [8] <u>See also</u> <u>Solis v. Matheson</u>, 563 F.3d 425, 433 (9th Cir.
2009) ("the Supreme Court has found that Indian tribes have a
strong interest as a sovereign in regulating economic activity
involving its own members within its own territory")(internal
quotation and citation omitted); <u>Square Pegs in Round Holes:
Alaska Native Claims Settlement Corporations Under Corporate Law</u>,
8 UCLA-Alaska L. Rev. 103, 137 (1979) (finding ANCSA generated an
inordinate amount of litigation, and exacerbated existing
friction between Natives and non-Natives communities).

    [9] Though Defendants rely heavily on <u>Wardle v. Ute Indian
Tribe</u>, 623 F.2d 670 (10th Cir. 1980), the question presented to
the <u>Wardle</u> court was whether Title VII's exemption of Indian
tribes in 42 U.S.C. § 2000e(b)(1) applied to a discrimination
suit arising under 42 U.S.C. § 1981.  The court was not asked to
apply the ANC exemption to another anti-discrimination provision.
In <u>Wardle</u>, an unsuccessful police chief applicant sued the Ute
Indian Tribe after he was denied the position because he was not
a member of the Ute tribe.  <u>Id.</u> at 671-72.  The Tenth Circuit
held that the tribal exemption in Title VII applied to the
plaintiff's Section 1981 claim and barred suit.  <u>Id.</u> at 673-74.
Integral to the court's analysis was the underlying congressional
intent to permit "an Indian preference in the narrow context of
tribal or reservation-related employment."  <u>Id.</u> at 672 (quoting
<u>Morton</u>, 417 U.S. at 548).  Thus, to the extent this Court's
                                                      (continued...)

*Services, Inc.*, the Fourth Circuit examined whether the ANC
exemption was broad enough to preclude a factually and legally
similar claim pursuant to § 1981 for employment discrimination on
the basis of race.  485 F.3d 206, 210-211 (4th Cir. 2007).  In
that case, the defendants, an ANC and its subsidiary,[10] argued
they were exempt from a federal anti-discrimination suit arising
from the operation of a for-profit federal construction project
in Maryland.  Because of § 1626(g)'s self-limiting language[11] and
the Supreme Court's broad interpretation of § 1981, the *Aleman*
court concluded that the ANC exemption was too narrow to preclude
the plaintiff's factually identical claim brought under § 1981.
*Id.* at 211.  The Fourth Circuit reasoned that, even though the
coverage of the two statutes overlapped, it was not "implausible"
or "paradoxical" for Congress to exempt ANCs from only one of two
"overlapping" or "parallel" causes of action.  *Id.* at 212-13.

---

[9](...continued)
reasoning is inconsistent with *Morton*, it is evident that *Morton*
is readily distinguishable from the facts of this case, all of
which arise well outside the context of a tribal or reservation-
related employment preference for Native Alaskans.
  [10] That case involved one of the current defendants, Chugach
Support Services, Inc., and their parent company, Chugach Alaska
Corporation.  *Id.* at 208.
  [11] Section 1626(g)'s limiting language:
    For the purposes of implementation of [Title VII],
    a Native Corporation . . . or affiliates [of]
    which the Native Corporation owns [at least 25
    percent] shall be within the class of entities
    excluded from the definition of "employer" [in
    Title VII].

Because of the limited case law construing the scope of the ANC exemption, analysis of the scope of the tribal exemption is instructive.  Courts, generally, have construed the tribal exemption narrowly and found tribal organizations liable under generally applicable statutes, unless liability would impinge upon the tribe's self-governance.[12]  For instance, under this principle the Eleventh Circuit held that a tribe-operated business was liable under Title III of the ADA, even though Title I of the same statute exempts Native American tribes.  Fla. Paraplegic Ass'n, Inc. v. Miccosukee Tribe of Indians of Fla., 166 F.3d 1126, 1129 (11th Cir. 1999); cf. EEOC v. Cherokee Nation, 871 F.2d 937, 938 (10th Cir. 1989) ("ADEA is not applicable because its enforcement would directly interfere with the Cherokee Nation's treaty-protected right of self-government"); Nero v. Cherokee Nation of Oklahoma, 892 F.2d 1457, 1463 (10th Cir. 1989) (plaintiffs could not assert claims under 42 U.S.C. §§ 1981 and 2000d because they would affect the tribe's right to self-governance).  Under this principle, the scope of the ANC exemption should be circumscribed to circumstances where

---

[12]  This emphasis on self-governance is not limited to the anti-discrimination context.  Compare Donovan v. Navajo Forest Products Indus., 692 F.2d 709, 712 (10th Cir. 1982) (OSHA held inapplicable to tribe in part because enforcement "would dilute the principles of tribal sovereignty and self-government recognized in the treaty"), with United States Dep't of Labor v. Occupational Safety & Health Review Comm'n, 935 F.2d 182, 183-84 (9th Cir. 1991) (finding tribal lumber mill employer subject to OSHA because it "employ[ed] a significant number of non-Native Americans and [sold] virtually all of its finished product to non-Native Americans through channels of interstate commerce").

the burden of employer liability under federal anti-

discrimination laws impinge on a tribe's self-governance by

interfering with the Native American employment preference.

D.   **Alaskan Native Corporation Liability Under The Americans With Disabilities Act**

1.   The Americans With Disabilities Act

Under Title I of the ADA, all "covered entities" are

prohibited from discriminating against an individual on the basis

of a disability,

> . . . in regard to job application procedures, the
> hiring, advancement, or discharge of employees,
> employee compensation, job training, and other
> terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a).  A "covered entity" is defined as "an

employer, employment agency, labor organization, or joint labor-

management committee."  42 U.S.C. § 12111(2); see also Carparts

Distribution Center, Inc. v. Automotive Wholesaler's Ass'n of New

England, 37 F.3d 12, 18 (1st Cir. 1994) (holding that whether an

employer is within ADA's coverage depends "a great deal . . . on

circumstances").  Like Title VII, Congress has exempted certain

"employers," including Native American tribes.  42 U.S.C. §

1211(5)(B)(i); see, e.g., Charland v. Little Six, Inc., 198 F.3d

249 (8th Cir. 1999) (holding former employee of tribe-owned

casino has no private remedy under the ADA because of tribal

exemption).[13]

---

[13] As previously discussed, supra n.4, in a footnote in
their opening brief, Defendants assert that all ANCs are also
                                                  (continued...)

The purpose of the ADA is to "invoke the sweep of Congressional authority . . . in order to address the major areas of discrimination faced day-to-day by people with disabilities," 42 U.S.C. § 12101(b), and "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities."  42 U.S.C. § 12101(b)(1) (emphasis added).  In light of the ADA's broad language and purpose, it is unclear how far the Native American exemption reaches.  Miccosukee, 166 F.3d at 1126, 1134, n.18 ("The legislative histories of both the ADA and [Title VII] are void of . . . any further information regarding the scope of the statutes' coverage with respect to Indian tribes").  Title I of the ADA incorporates the powers, remedies, and procedures of Title VII, so both provisions should be construed consistently.  U.S. Airways, Inc. v. Barnett, 535 U.S. 391, 420-21 (2002)

---

[13](...continued)
"tribes" for federal legislative purposes, citing a case, AFL-CIO v. United States, 195 F. Supp. 2d at 21, that merely states that Alaskan Native groups may be "tribes."  Defendants do not argue, however, that they are excluded from ADA Title I claims as "tribes," nor have they suggested that they are in any way involved in tribal governance (or that Plaintiff, who worked on Dover Air Force Base in Delaware, played any part in tribal affairs).  See Seldovia, 904 F.2d at 1350 ("Because [the Native corporation] is not a governing body, it does not meet one of the basic criteria of an Indian tribe").  The Court further notes that if ANCs were all truly "tribes," then the subsequent ANCSA provision exempting ANCs from Title VII would be superfluous. See Pennsylvania Dep't of Pub. Welfare v. Davenport, 495 U.S. 552, 563 (1990) ("Our cases express a deep reluctance to interpret a statutory provision so as to render superfluous other provisions in the same enactment.").  The Court, consequently, has no basis to conclude that Defendants are exempt under the tribal exemption in Title I of the ADA.

(dissenting opinion, Souter, J., and Ginsburg, J.); S. Rep. No. 101-116, at 24-25 (1989) (the ADA is "consistent with [Title VII], the term 'employer' under this legislation does not include . . . an Indian tribe"). Thus, the congruence between these anti-discrimination statutes suggests that the Native American exemption in the ADA and Title VII reflect the same federal policy, and are subject to the same limits.

No court has examined the scope of liability under the ADA for an Alaskan Native Corporation employer. Courts have, however, examined a related question of law: whether tribal organizations or businesses are exempt from Title III of the ADA, a section of the ADA which does not explicitly include or exclude Native American tribes.

In Miccosukee, the Eleventh Circuit found that Title III of the ADA applied to a public restaurant and gaming facility owned and operated for-profit by a Native American tribe, because the commercial enterprise was not part of the tribe's governmental function. 166 F.3d at 1128-30. The Miccosukee court relied on the two principles. First, the proposition that a general statute, like the ADA, is applicable to all persons including Native Americans and their property; and, second "that tribe-run business enterprises acting in interstate commerce do not fall under the self-governance exception to the rule that general statutes apply to Indian tribes."[14] Id. at 1129 (internal

_____

[14] To determine whether Title III of the ADA, though a
(continued...)

17

quotations omitted) (citing <u>Federal Power Comm'n v. Tuscarora Indian Nation</u>, 362 U.S. 99, 116 (1960)); <u>Cf.</u> <u>EEOC v. Karuk Tribe Housing Authority</u>, 260 F.3d 1071, 1080 (9th Cir. 2001) (holding that the tribe's housing authority was exempt from the ADEA, a general statute, because the tribal entity was not just a business but also functioned as an arm of tribal government by providing housing to tribe members).

Similarly, the Northern District of California denied a tribe's motion to dismiss a Title III ADA claim brought against the Native American tribe arising from a for-profit, public restaurant, hotel, and night club the tribe owned and operated. <u>Cher-Ae</u>, 2002 WL 33942761, at *3.  The <u>Cher-Ae</u> court, like the <u>Miccosukee</u> court, concluded that the ADA, as a generally applicable statute, applied to the tribe; and further that the tribal ownership and operation of an interstate for-profit commercial enterprise, employing non-Native American employees, falls beyond the limits of a tribal exemption or immunity.  <u>Id.</u> at *3-5.  <u>Cf.</u> <u>Giedosh v. Little Wound School Bd., Inc.</u>, 995 F. Supp. 1052 (D. ND 1997) (holding that the term "Indian tribe" under the ADA is broad enough to encompass a school board, a non-

---

[14](...continued)
generally applicable statute, nevertheless did not apply to Indian tribes, the Eleventh Circuit adopted the three-part test in <u>Donovan v. Coeur d'Alene Tribal Farm</u>, 751 F.2d 1113 (9th Cir. 1985).  <u>Miccosukee</u>, 166 F.3d at 1129.  The <u>Donovan</u> factors are whether the statute: (1) abrogates rights guaranteed under an Indian treaty, (2) interferes with purely intramural matters touching exclusive rights of self-government, or (3) contradicts Congress's intent.  751 F.2d at 1116.

profit state corporation, where the tribe used the board to
manage a tribal school).

Thus, absent an explicit exemption, courts have concluded
that for-profit tribal enterprises that are involved in
interstate commerce fall within the scope of federal anti-
discrimination law.  Further, imposing employer liability under
such circumstances does not subvert the policy goals of the
tribal exemptions because it does not interfere with the Native
American employment preference.

2.   The Americans with Disabilities Act and ANCs

The Court rejects Defendants contention that the Title VII
exemption for ANCs also bars employer liability under Title I of
the ADA.  First, ANCSA explicitly limits the scope of the ANC
exemption in § 1626(g).  As the Aleman court noted, "the single-
sentence exclusion for ANCs makes [it] clear twice" that the
"exclusion[] is limited to . . . Title VII."  Aleman, 485 at 211.
Further, the Court agrees with Aleman that the mere fact that
federal anti-discrimination provisions overlap does not mean that
the ANC exemption of one applies to all anti-discrimination
statutes.  Id. at 212.  As the Fourth Circuit noted, there is
"nothing implausible about Congress' enacting overlapping causes
of action . . . [and] deciding that [ANCs] should be exempt"
under one statute and not another.  Id. at 213.  For instance, it
is plausible that Congress concluded that employer liability for
discrimination on the basis of disability, unlike laws
prohibiting discrimination on the basis of race or national

origin, does not interfere with a tribe's self-governance or
ability to control its own enterprises through a hiring
preference.

Turning to the ADA, its broad language and legislative
history emphasize its sweeping authority and national scope.
Title I of the ADA lacks an ANC exemption; moreover, case law
circumscribes its tribal exemption to tribal organizations
functioning in a governmental role.  While the boundary of the
ADA's tribal exemption is imprecise, it is clear that for-profit
tribal corporations operating in the ordinary course of
interstate commerce fall outside that boundary.

Finally, the growing role of ANCs as national commercial
enterprises militates against a broad interpretation of its Title
VII exemption.  Defendants' parent company, Chugach Alaskan
Corporation, operates "a traditional business, employing about
5,000 people in construction, environmental services,
informational technology, telecommunications, and other areas."
Aleman, 485 F.3d at 209.  Consequently, when an ANC invokes
immunity it is not promoting Native American employment nor
protecting tribal self-governance, but avoiding normal anti-
discrimination prohibitions having nothing to do with Native
American ethnicity or tribal governance.  Clearly, a broad
application of the ANC exemption, under these circumstances, does
not conform to the legislative purpose of § 1626(g).

In sum, the statutory language, legislative history,
analogous case law, and federal policy all support one

conclusion; under these facts, Alaskan Native Corporations retain employer liability under Title I of the American with Disabilities Act.

**E.   Alaskan Native Corporation Liability Under The Family Medical Leave Act**

  1. The Family Medical Leave Act

Through the FMLA, Congress created a scheme of employee rights and employer responsibilities which were intended to "balance the demands of the workplace with the needs of families" by "entitl[ing] employees to take reasonable leave for medical reasons . . . in a manner that accommodates the legitimate interests of employers," 29 U.S.C. § 2601(1)-(3), and make it unlawful for "any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]" 29 U.S.C. § 2615.

In contrast to the exclusionary terms of Title VII and the ADA, the FMLA defines "employer" in broad unqualified language. The FMLA defines "employer" as, "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . include[ing] public agenc[ies]." 29 U.S.C. § 2601(4)(A)(ii)-(iii) (emphasis added). When drafting the FMLA, Congress elected not to carve out an exemption for Native American tribes or tribal organizations. See Chayoon v. Chao, 355 F.3d 141 (2d Cir. 2004) ("The FMLA makes no reference to the amenity of [Native American] tribes to suit") (internal quotations omitted).

Further, unlike Title VII and the ADA, the central purpose of the FMLA is not to "minimize[] the potential for employment discrimination." 29 U.S.C. § 2601 (b)(4). Rather, Congress enacted the FMLA to "preserv[e] family integrity," § 2601 (b)(1), and ensure there was adequate "job security for employees who have serious health conditions that prevent[ed] them from working for temporary periods," § 2601(a)(4).

No courts have analyzed whether ANCs are subject to the FMLA. The only courts to examine whether tribal organizations are subject to the FMLA's employer obligations held, based on the doctrine of tribal immunity, the there is not private cause of action under the FMLA against tribal organizations. See, e.g., Chayoon, 355 F.3d at 143; Myers v. Seneca Niagara Casino, 488 F. Supp. 2d 166, 171 (N.D.N.Y. 2006); Cf. Kiowa Tribe v. Manufacturing Tech., Inc., 523 U.S. 751, 755 (1998) ("There is a difference between the right to demand compliance with state laws [i.e. exemption] and the means available to enforce them [i.e. immunity]."); Miccosukee Tribe, 166 F.3d at 1130 ("[W]hether [a Native American] tribe is subject to a statute and whether the tribe may be sued for violating the statute are two entirely different questions.")

### 2.   The Family Medical Leave Act and ANCs

The Court rejects Defendants contention that the Title VII exemption for ANCs also bars employer liability under the FMLA. As the Court stated earlier, supra, the language and legislative history of ANCSA support a narrow construction of the ANC

22

exemption, limiting it to Title VII claims.  Further, compared to Title VII and the ADA, the FMLA defines "employer" in broader terms and provides no exemption for ANCs, or even Native American tribes.  Additionally, unlike Title VII and the ADA, Title VII and the FMLA do not share statutory language, procedures, or remedies that would support an exemption by inference.  Moreover, there is almost no overlap in coverage between the FMLA and Title VII.  In the end, there is no substantial evidence suggesting a ANC exemption from Title VII claims as provided for in the ANCSA is somehow expanded to include the FMLA.  Therefore, because of the narrow purpose for the ANC exemption -- to protect tribal self-governance and to permit an Alaskan Native employment preference -- and the FMLA expansive scope, and their divergent purposes, the Court concludes that Alaskan Native Corporations are subject to employer obligations under the Family Medical Leave Act.

## III.  CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss the Title VII claim is granted; but their motion to dismiss the ADA and FMLA claims is denied.  The accompanying Order is entered.

<u>November 6, 2009</u>                    <u>s/ Jerome B. Simandle</u>
Date                                JEROME B. SIMANDLE
                                    United States District Judge
                                    (sitting by Designation)

23